Good morning, Judge Lopez. Good morning, I am here. We can see you, which is wonderful. Thank you once again. This case has been continued from our, I think November, sitting last fall in any event. It was clear back in 2013. Yeah, that's right, a year and a half ago. During which I believe we had a two-day sitting with 12, now maybe 13 argued cases and 7 presidential opinions. So Judge Lopez helped us from the first circuit and no good deed has been punished. That was a pleasure to be part of it all. Thank you. It was a record breaker. All right, we will call our only case of the day, Wolfe v. All State. May it please the court, my name is Marshall Wolfe, representing appellant All State. I would like to reserve with the court's permission four minutes for rebuttal. It's granted. From the outset of this case, the district court's rulings did violence to two substantial principles of Pennsylvania law. The first is the sanctity of contract by allowing the plaintiff to proceed with a bad faith claim in a case in which it's insured had received a defense and a verdict had been obtained that was lower than the policy limits. The court essentially eviscerated All State's contractual right to determine the course of a litigation. Do you have a contractual right to ignore the exposure that you're insured has to punitive damages? I believe there's not only a contractual right, but that there's a legal right, because Pennsylvania does not allow punitive damages to be insured, at least when they're directly incurred. Mr. Wolfe, could you raise the microphone a little bit? Oh, sure. Just so we can hear you. Sure. So your view is you're obligated to ignore the exposure to bad faith? Well, I don't know that, yes, I actually think technically you are, because I think you'd be violating Pennsylvania public policy if you didn't. Does the scope of your duty not require you to settle the whole case and approach that in a reasonable way? That is, you don't get to just say, well, we're only going to think about compensatories. Aren't you obligated to think about the whole case? No, I really don't think you are. In fact, the cases that we cited in our brief, not from Pennsylvania, unfortunately there's no binding Pennsylvania precedent on this point, but there are cases from other circuits and other state court jurisdictions that have held exactly that, that you have a duty perhaps to defend the case, but in terms of indemnity and in terms of settlement. No, I'm talking about the indemnity at this point. I'm talking about your obligation to approach settlement. Here's what the Pennsylvania statute says. It defines bad faith as, quote, not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which the company's liability under the policy has become reasonably clear. Now, if liability under the policy has become reasonably clear, and here it was reasonably clear. You didn't even defend on liability when you went to trial, so it was clear there was liability. Is a failure to engage in prompt, fair, and equitable settlement of claims something that exposes you to damages? Well, in certain circumstances it does. For example, it's very clear, and we acknowledge this under Pennsylvania law, that if you're going to exercise your contractual right to litigate a case rather than settle it, and you expose the insured to an excess verdict on compensatory damages, covered compensatory damages, yes, you are at risk of facing a common law contractual bad faith claim. But that does not apply. There's nothing in any of the regulations or the statute or the bad faith statute that says that you have any duty whatsoever with respect to claims that are not covered. We're going to have to predict what the Pennsylvania courts would do about this. What Pennsylvania case or cases points us to the conclusion that you would like us to reach? Well, in the brief we cited the Babcock and Wilcox case, in which Judge Wettig reiterated the principle that an insurance company, the heart of the insurance bargain is that in return for the premiums that it receives, the insurance company is going to pay out a covered claim, and it has the right to control the litigation and determine whether to settle or whether to litigate a claim. And that's really the heart of the bargain. But that doesn't get to the issue here. The issue here is whether in consideration of that right that it has, whether it has to take the punitives into consideration. And I thought you would come at it more from the standpoint of the case law to talk about the nature of punitive damages. I mean, isn't that the essence of what you're saying? Yes, I'm sorry to interrupt, Your Honor. But, yes, I do agree with that. I think it's an interface of the two principles. I think that the two coalesce. The insurance company has the right under the contract to litigate the cases. Pennsylvania says you can't pay punitive damages. So when you put the two of them together, in the absence of any precedent specifically on point, and I think the logical conclusion is you reach the conclusion that I did, which is that all states did, which is that you don't have an obligation to settle the punitive claim. Yes, but, of course, their assertion is they didn't ask you to settle the punitive. They just asked you to engage in good faith negotiations on the claim, on the case, which you failed to do. Is it your position that even if there was bad faith here, there should have been summary judgment because the only damages flowing from the bad faith were punitive damages which can never be indemnified? Is that the argument you're putting to us? Well, I'm not sure that's exactly how I would phrase it, but I think it gets to the gist of what I'm arguing. But I am trying to get to what you're saying. Maybe I should put it this way. Do you concede that there was bad faith here? Oh, absolutely not, Your Honor. Okay. But a jury found that there was bad faith here, right? That's correct. You went to a jury and the jury said you failed to carry out your responsibility to negotiate in good faith in this case. Why should that jury verdict not stand? Well, the jury verdict shouldn't stand because the case should have never gone to the jury in the first instance. Why? Okay. Let's say if the theory is that there was some flaw in the negotiation process that related solely to the covered claims, in this case, if there were no punitive claim, if this claim had simply been a claim where the insured won a $15,000 verdict and Allstate paid it out, there wouldn't be any bad faith claim. It wouldn't matter what the negotiations were. That's the question. Does it matter? See, you're saying it doesn't matter what the negotiations were, and that's exactly what I'm trying to get at here, Mr. Walkew. The question here is, were you obligated under Pennsylvania law to negotiate in good faith? Your adjuster was wrong by an order of magnitude. The jury said $15,000, more than an order of magnitude. You didn't go above $1,200. Independent judges looking at it said it was six-plus times more than he was willing to go. He never budged off the first offer of $1,200. Why couldn't a jury have looked at that and said that's bad faith? Why couldn't that go to a jury? Well, that shouldn't go to the jury because the verdict came in under the policy limit, and under those circumstances, Allstate has acted in conformity with the contract, and it's done everything that the insured contracted. Isn't your answer that there would be no damages? That the insured has no claim? Yes. But your argument can't be that there was no duty, because what you seem to be saying is there's just no duty there. We don't have to negotiate. If it's clearly going to come in under the policy limits, then we've got no obligation to talk to the other side at all. Is that your position? I think that's a fair reading of what the contract rights are. Well, we're not talking about contract rights. We're talking about quasi-fiduciary duties giving rise to tort liability under Pennsylvania law, which requires, according to the statute I just read you, maybe I got the wrong statute, but it says you've got an obligation to negotiate in good faith when liability is clear. Well, I'm not 100% sure that that regulation applies to third-party claims as opposed to first-party claims. Well, you can accept that it applies, but if you're talking about the fact that Wolf's suing instead of Mr. Zuerl, that's been resolved by the Pennsylvania Supreme Court. We are where we are on that. It's an assignable claim, and that's off the table, right? Yes, that's absolutely true. So the question is, what are we to understand from the statute that says you're obligated to negotiate in good faith? You seem to be saying if it's clear it's going to come in under the policy limits, we don't have to do anything. If that's true, what does the statute mean? Well, first of all, I think in this instance, if you look at the negotiation process, it's a two-way street. We made an offer. They made a demand. We made an offer. Don't go there, because now you're arguing that the jury was wrong, right? Now you're saying they were wrong, and that's not a helpful argument to hear. They said you negotiate in bad faith. Your argument seems to be it should never have gone to the jury. I'm asking you to defend that on the basis of what the statute says. Get me past the statute. Well, I think you just have to go back and you look at the Cowden case, which is the case in which Pennsylvania Supreme Court established the parameters of a third-party excess verdict liability case. What that case focuses on is did you make a reasonable decision to try the case to a verdict under the policy limit? That's really the principle that the Pennsylvania Supreme Court laid out in Cowden, and it's consistent with the insurance bargain, and that's why I think you get past the statute. You're saying that the point has to be regarding excess. Yes. That the whole essence of the bad faith statute has to do with excess compensatory damages and the assessment by the insurance company at the time of settlement as to kind of rolling those dice, if you will. That's interesting because you rely on the Lira case, which in turn relies on the Magnum Foods case, the Tenth Circuit case, right? Yes. Okay. So right in the Lira decision, it's quoted just by the dissent, but it's an accurate quote of the Tenth Circuit's Magnum decision that, quote, the insurer's duty of good faith included working cooperatively with insured throughout in both defending and attempting to settle the entire case, with fair consideration given to insured's concerns because of its exposure to the uninsured punitive claim. The good faith duty of the insured thus required cooperative efforts by the insurer with insured throughout to handle and settle the entire case. Your position is that's just a different understanding of good faith and bad faith that your Pennsylvania law is not in accord with what the Tenth Circuit viewed as the law and what the Colorado Supreme Court viewed as the law regarding the obligation to negotiate good faith. Well, I think there are, A, there are differences from state to state, certainly in terms of what the parameters of bad faith are, but I think also the result in the Lira case is not, despite whatever language there is in the opinion, when you look at what happened and what the court decided based on the facts, it's not any different in this case. The insurer wasn't any more reasonable in resolving the underlying case in that case. It didn't do it. It chose to roll the dice. And if you roll the dice, the risk is there's an excess compensatory and then you're subject to bad faith. And if you roll the dice, but you'll win and you're not subject to bad faith liability. Does it really come down to our prediction as to whether the Pennsylvania Supreme Court would adopt the majority in Lira or would the Pennsylvania Supreme Court adopt the dissent in Lira? And I get back to the question, what in Pennsylvania law would point you, case law, would point you to say, aha, Pennsylvania would in no way say that the insurer has the duty to settle the compensatory part in order to minimize the insurer's exposure to punitive damages. And that's, I'm reading from the majority. What says, we have to write an opinion. We have to predict Pennsylvania. Why would we say that that reasoning is correct? Well, I think it goes, there isn't a case, Your Honor. Okay. I can't point you to a specific case, nor can the other side point you to a specific case that's going to direct you the other way. But what you can say is you can look at how important contract rights are and you can look at the reiterated, the oft reiterated principle that you can't insure against punitive damages. But there's also a second tier. You can't insure against punitive damages. But I get the feeling you guys are, you're still talking past them. Their assertion is we are not and never have asked them to insure us against punitive damages. We only ask them to do what they're obligated under law to do, which is to negotiate in good faith to settle a claim. Having failed to do that, they are the but-for cause of our facing a $50,000 liability. Now, TP&G says but-for cause is not good enough. You've got to have proximate cause. And we'll get to that in a second if my colleagues will let me keep exploring this with you. Yeah, but I do want you to go to that second. You were going to make a second point. I do want to make a second point, which is a very important one. And that is that in terms of bad faith, okay, at the time Allstate made its decision, there were the Lyra case, the PPG case, the Zeeman case. And so Pennsylvania law is very clear. And the cases are all cited in a footnote in the brief that an insurer is allowed to make a reasonable prediction of state law based on existing precedent. And if there's no binding case and there are cases that clearly say you have the right to roll the dice, that's also a reason why there was no bad faith here as a matter of law. So even if you get over the threshold of predicting what the Pennsylvania Supreme Court is going to say about the specific issue that we have before us, you still have the hurdle of Allstate having made a reasonable decision in light of existing case law. How is that? How does that speak to the question that's before us? The question isn't whether or not punitive damages are insurable. Everybody in the room and the district court judge and the magistrate judge all said they're not insurable. The question is whether you had some duty here to negotiate in good faith and whether that duty, whether you failed, having failed in that duty, whether the punitives can in any fashion figure into damages flowing from it, right? I mean, assume that there were other kinds of damages here other than the punitives. Some kind of emotional distress or damage to Mr. Zerl's reputation as an independent contractor. Nobody would hire him again. Something like that. And he was saying, I want to be compensed for those things, not for the punitives. Would your argument be, well, I should ask you, what is your argument? Well, my argument is that any damages that aren't covered by the contract, you don't have to take into consideration. So you're saying the damages are not in the existence of a tort. Pennsylvania law, I mean, they brought a tort claim and a contract claim. Even if the contract claim prevented that, what would prevent those kinds of damages from being compensable on the tort claim you were found liable on? Well, the fact is, in order for there to be bad faith, the insurer has to do something that's inconsistent with its other obligations. And their assertion is you can't do that. Which is a compensatory. Let's talk about proximate causation. Is proximate causation necessary? And do we have proximate causation here in terms of the punitives being approximately caused by the failure to settle? I mean, I would rely on the analysis in the PPG case to say that, in fact, proximate cause is required and that in this exact circumstance, that court found that while there was but-for causation, there was not proximate causation. And that's exactly the argument that I'm making here. Because we have the intervening cause of the jury verdict, if you will. Yes. Correct. And I do want to get back to Judge Jordan because I want to focus on the second argument, which has nothing to do with the duty to negotiate and the duty to deal with the covered claim or not. Before you get to that, answer the question about the duty to negotiate. If you've got a duty to negotiate and you're found liable for breaching that duty and so you're liable for a bad faith failure to negotiate, wouldn't you be liable for even if punitives are off the table, some other kinds of damages besides just excess liability on the contract would be compensable, right? Well, under a common law contractual bad faith claim, compensatory damages are available. That's the birth center case. So if Mr. Zerley had come in or if Mr. Wolf standing in Mr. Zerley's shoes had come in and been able to establish that whatever Allstate had done in the bad faith action, in the course of its conduct, which the jury had then found was bad faith, yes, under that particular claim, those damages would be compensable. Harm caused by the conduct itself would be compensable. But under the bad faith statute, there are no compensatory damages. It's only punitive damages, attorney's fees and interest, which first, frankly, doesn't make any sense in a third-party claim. I don't know how you measure interest in a third-party claim. So that begs the question of whether the bad faith statute was ever really intended to apply to these third-party claims as opposed to first-party claims. PPG depends in part the very first thing they cite for their approximate cause analysis. And, of course, approximate cause, you know, that's code for their policy reasons why we won't let this but-for cause be subject of liability. The very first thing they say is that it's negligent, bad faith here, it's a negligence on the part of the insurance company. And it seems to be that they weigh and think it's important to weigh the negligence of the insurance company in that instance against the egregious conduct of the insured and say, you know, this is out of balance. Under Pennsylvania law, however, the cases you cite tell us specifically bad faith can't be based on negligence. In other words, if a properly instructed jury finds bad faith, it's because there is some egregious conduct on the part of the insurer. Isn't that right? Well, excuse me, I'm losing my voice here, Your Honor. Under Pennsylvania law, essentially I think the bad faith standard is what I would call negligence plus. And the plus is you have to prove that the insurer knew or recklessly disregarded its lack of a reasonable basis. That's the standard that's been articulated. But I don't think you get so far away from negligence that you lose the concept of approximate cause. Turlecki says, that's a Pennsylvania case that's been cited to us, says near negligence or bad judgment is not bad faith. In other words, it's got to be gross negligence under Pennsylvania law, right? It's got to be something pretty bad. Well, it has to be that you recklessly disregarded your lack of a reasonable basis. Okay. So if that's the case, then you have a distinctly different circumstance from PP&G, don't you? Because you don't just have negligence versus recklessness. You've got recklessness versus recklessness. Does that change the calculus? I really don't think it does. I think the issue comes back to this approximate cause point. And I really do want to get back to my second argument, because even if you concluded that there was a duty to negotiate and it had been breached and somehow that duty was completely separate and apart from the punitive component of the underlying claim, you still have the issue of what does an insurance company do when there's a void in the law. And they are put in the position that the panel is now put in, of having to make a prediction of what Pennsylvania law will be. And the case law is very clear that unless your position on the law is patently unreasonable, you're entitled to choose between two options. Once they were faced with two options, one was it could say, okay, we think the Pennsylvania court is going to require us to try to settle the whole claim and try to save the insured from the punitives. Hold on. But that's an argument for the jury. That's an argument. You would ask for the instruction of the jury that if it was relying on case law, that it didn't have to cover the punitives. I mean, I don't know that that's an argument that really should influence us. Where's the gap in the law? The gap in the law, I'm missing the argument because you're going to the punitive point. The jury was given this on the assertion that you failed to negotiate in good faith on the compensatories. I mean, it was the district judge's decision, was it not, that this was about a failure to negotiate on the compensatories, which got Wolf past summary judgment? Yes, that's right. And you guys make a point of that in your briefing. So where's the gap in the law that says you're free to not negotiate in good faith on the compensatories? Well, I think that's exactly what Zeeman, Lira, and PPG, and I'll read from another case. It's a Fifth Circuit case, St. Paul Fire and Marine Insurance Company, the convalescent services, 93F 3rd 340. And in that case, a similar fact situation. There was a jury verdict within the compensatories, but there were punitives in excess of the policy limits. And the court said we start with the proposition that an insurer has no duty to settle a claim that is not covered under its policy. This language indicates that St. Paul had no duty to take into consideration CSI's potential for punitive damages during settlement negotiations. I think we're still talking past each other. But if I can be indulgent on one last point. On Erosion and Lemonade, which was also briefed here in one of the central arguments, assuming we got past all this and we decided, oh, no, it could go to the jury, is your concern about the influence on the liability phase of the bad faith claim ameliorated at all by a bifurcating of the trial so that the jury never heard about the bad faith finding, excuse me, never heard about the punitive damages finding unless and until it found bad faith and then damages were presented to it? I just don't understand what you're saying. Absolutely. Yes, I mean, I think that's a critical point. And actually, if you go back and read the Magnum case, which you quoted from earlier, in that case the court ordered a new trial exactly because of the reason that the amount of the punitives had been allowed in as a potential item of damages and the jury heard about it. And that's the same thing that happened here. And that poisoned the case from the liability phase they were concerned about, right? Okay. Thank you. Judge Lopez, do you have any questions? Yes, I do have one. Thank you. I'm just trying to understand the breadth of your claim. Because I understand that you are saying that in any situation where the insurer conducts settlement negotiations, those settlement negotiations are not fruitful. The case goes to trial, and the outcome of the trial is a damage award that is well within the policy limits. But as a matter of law, given that outcome, there cannot be a bad faith claim brought against the insurer, either under the common law contract theory or under the statutory tort for bad faith. And if that is your proposition, I guess it then follows that no matter how the insurer conducted the negotiations with the plaintiff, no matter how it treated its own insurer during that process, no matter, to pick up on the point that Judge Jordan made, whether the litigation took a huge emotional toll, whether there was reputational damage, perhaps, to the plaintiff, to the insured, none of that would matter so long as the outcome was a trial verdict well within the policy limits. Is that your position? Yes, Your Honor, it is. Well, let me back up on Judge LePez's question. Because I think when you throw in emotional and reputational, I believe, Mr. Walthy, you conceded that those would be items of compensable damage as harm caused under your policy, correct? Not under the policy, but if there was a viable bad faith claim of the contract variety as opposed to the statutory variety, that those would be damages that could be considered under the birth center case. But only if there was first a viable bad faith claim. And there is no Cowden claim. I mean, if the punitives hadn't been here, there would not have been a bad faith claim. Well, because there's no damage, because there's no money. Right. There's absolutely no harm to the insured. In fact, the jury found on the contract claim that although there was bad faith, there were no damages. Judge LePez, does that lead to anything further? That's helpful. Thank you. That's helpful. Thank you. All right. We'll hear from you on rebuttal. Thank you. Good morning. May it please the Court. I'm Bill Carlucci. I'm here on behalf of the appellee. Of course, I will stand for whatever questions the Court may have. But there are just a few issues that I hope to make quickly before we move to questions. The first being that in response to Judge Randell's question about cases in Pennsylvania that would lead one to the conclusion that the case was properly decided, I respectfully draw the Court's attention not only to the Cowden case, but also to the birth center case and to the language in those cases, which suggest a Pennsylvania policy of trying to meet in full the consequential damages of a victim of bad faith. But they didn't involve punitive damages, did they? They were not punitive damages cases, Judge. Don't we have in Esmond a court talking about compelling reasons for not allowing those who are guilty of conduct that would warrant punitive damages, not allowing them to escape the element? And the point made also in Esmond that the delinquent driver must not be allowed to receive a windfall at the expense of purchasers of insurance, transferring his responsibility for punitive damages to the very people, the driving public, to whom he is a menace. If we say that insurers are to cover punitive damages, does that not mean that insurers are going to have to take into account in pricing policies the potential that they have these drivers out there who do bad things and they're going to have to be paying for it if they don't settle the case and there are punitives? I have two answers, Judge Rendell. The first is that I suspect this court likely will not say that insurers are legally obligated to cover punitive damages. The fact of the matter is they are not. Oh, absolutely. Definitely not allowed to, even if the policy doesn't say that. But I respectfully suggest that there are two compelling issues here quite apart from that one because the reality is that this court is not going to do that. The two points I wish to make are these. First of all, in this particular case, the jury did not award any compensatory damages. Well, a bad faith claim doesn't allow that? The statute doesn't provide for compensatory. It provides only punitives. In fact, the jury considered both a common law claim and a bad faith claim found in favor of both claims, but then specifically did not award damages, not any. No compensatory damages whatsoever. I don't understand your point. The whole point is this. The entire argument that Allstate is making is made based upon a different set of facts, not these. Allstate is arguing that the jury ought not to be allowed to compensate my client on the bad faith claim from the first trial. They didn't. Not a penny. The point is this, Judge Rendell. Wait, they awarded the amount of the punitive damages. The only thing in common is the number. Oh, really? Really? What evidence was there of damages other than that? The point is that there was a claim for compensatory relief for the punitive damage which arose out of the first trial, and the jury awarded nothing. The jury awarded punitive damages under the statute on the bad faith claim. They did not award the punitive damages from the first trial. That's your argument. It is true the number is the same, but the reality is there was no compensatory damage whatsoever. Let me ask you another question about insurance and kind of what this holding would mean. An insurance company, when it decides what it's going to negotiate and what the right number is, looks at all the facts of the loss, the dollars and cents and the medical reports, et cetera, et cetera, and says, you know what, we think given what happened here, this is reasonable versus that. If we are going to hold that an insurance company must also factor in the punitives and the potential, because that's what we're talking about. When you settle, when you're asked to settle, you've got the crystal ball there. And for an insurance company, usually the crystal ball is all the compensable harm under the policy. If the insurance company is also going to have to consider the likelihood of punitives, isn't it going to have to venture into an exercise that borders on its really insuring against the punitives? In other words, it's going to have to look into the conduct, look into this. Isn't that out of the realm of what Pennsylvania would have it do? The short answer is yes. The reality is under Pennsylvania law, punitive damages are not insurable. That's not this case. Then what case are you citing to us or what principle says that the insurance company must do what you say it must do? That is, when settling under the policy, it must take into account the potential for punitive damages and its failure to do so, well, we'll get to causation later, that it must do that as a matter of principle. That, Judge Rendell, was Judge Jordan's question a moment ago. That is, what really is the obligation of the insurance company? Exactly. And I apologize for the fact that although there are three cases, circuit cases, that clearly give us guidance on that question, they do not appear in our brief, for which I apologize. I will quickly mention them if I may. I'm sorry. There are three additional cases in Pennsylvania cases? There are three circuit cases, which in my judgment answer your question. Well, I want to know about Pennsylvania law. Well, it is my belief that the instruction in Pennsylvania law comes from Cowden and from Birth Center. But the three circuit courts have specifically addressed exactly what is the obligation of the insurance company under circumstances in which a claim for punitive damages is in play. Okay. And so quickly, if I may, they are the Carpenter case. Well, I have Carpenter. And you also have Ginn, G-I-N-N. Now, Carpenter, there was state law that says for bad faith, the insurer must pay for all harm or everything that flows from that. So, okay. In addition to Carpenter, what else? The philosophy in Carpenter is precisely the same as the philosophy in Birth Center. It's a but-for test. Ginn, G-I-N-N, I take it the court has that as well. It's reported at 423. What's the name of the case? I don't have that. Ginn, G-I-N-N, versus American Liberty Insurance, which is reported, it's the Fifth Circuit. 423. 423. That's second, 115. And then the court has Magnum Foods. And what all three circuits have concluded is this. If the carrier accepts the entire defense, they must consider the entire case. There is no case which holds, there is no case which suggests that the carrier has an obligation to pay punitive damages, nor is there any case which suggests that the carrier has an obligation to pay a premium on compensatory damages because of the threat of punitive damages. Yeah, but that kind of, that's exactly the point. I don't want to put words in my colleague's mouth, but that's the very thing we're wrestling with here, right? You can't ignore the reality that if you say to an insurance company, you have got to settle this thing taking into account your insurer's interests, which include their interest in avoiding punitive damages, that you will cause them, in order to meet that obligation and avoid finding a bad faith later, to price into their settlement offers a factor that is accounting for the risk of punitive damages. How can that not, as a matter of just basic economic reasoning, how can that not be the case? Judge Jordan, I believe that the carrier does not have that obligation. I know you're saying they don't have that obligation. I'm asking you, I'm just asking you as a matter of basic economics. We could say there's no case that holds that the law of gravity exists, but it exists whether there's a case saying it or not. And we know that in the real world, sophisticated actors take account of risk. So if you say to an insurance company, you will have to take consideration of all of the interests associated with this case, not just the covered compensatories, but risk associated with excess liability and risk associated with punitives, risks associated with other compensables. Once you put that on the table, they're going to factor in a risk factor and a price associated with the punitives, aren't they? The short answer, Judge Jordan, is no. Their obligation is simply this, to negotiating good faith. And they didn't in this case. And as you aptly observed, they blew it by more than a factor of ten. The law is not that they have to predict the result. The law is that they have to negotiate in good faith. You've got to go to the question, though. I mean, you're going around the question. You've got to answer the question. How is it that what you're suggesting, how can it not result? Explain to me how it cannot result in the insurance company, and hence, since they'll pass it on in pricing, the public at large, bearing some measure of financial hurt because they have to deal with the prospect of covering the egregious behavior of the insurer. Judge Jordan, I cannot prove a negative. The court is suggesting to me. Well, I'm not asking you to prove a negative. I'm just interrupting you to say I'm only asking you to give me some reasoning that would help me understand how that will not happen. What's the economic rationale you've got for how that would not be the necessary result? Just as surely as if you dropped a brick from a building, it will fall to the ground. Because I simply do not accept the premise. I do not accept the premise that the insurance company's obligation to accept the entire defense will necessarily affect their pricing strategies. Frankly, I believe it is, at best, speculation. They already have an obligation to defend the entire case, and what Allstate is suggesting is we are entitled to ignore everything except the threat of an excess verdict. Counsel, if I might, you keep saying they accepted the entire defense. As soon as punitive damages entered the case, they advised their insured that under the policy they have no obligation to pay for punitive damages and advised the client that because of the entry of punitive damages into the case, he should consult his own attorney. It seems to me they were indicating immediately that they were not accepting defense of the entire case. They were telling him they have no responsibility to defend the prospect of punitive damages. I do not believe that that is true. I believe that although they made the disclosures that the court has suggested, that Judge Lopez, in fact, they appeared as the only counsel for the defendant at trial, and they made all the arguments that were made, and they did not insist that punitive damages be separately defended. Now, I understand that the court may very well say that they had that defense thrust upon them, as does every defense counsel when they appear, but the fact of the matter is that they accepted the entire defense at trial. Well, I suggest the record is to the contrary, as I understand it, that that admonition was given to the insured as soon as the punitive damages entered the case. Go ahead, if you had an answer to that. I do not have an answer. I believe that the reality is they appeared for the defendant at trial on all claims. I had hoped to address a misstatement earlier made in the first argument, and that is it is not the law of Pennsylvania that there is a requirement for bad faith that there be an excess verdict. In fact, in birth center, the carrier paid all the damages. In birth center, the carrier, St. Paul, agreed to pay the excess verdict, but the Supreme Court of Pennsylvania said that any damage, whether it be emotional distress, reputation, whatever, could be the subject of a common law bad faith claim. Now, it's true that those are not permitted under 8741. They're not permitted under the tort, only under the common law compensatory claim, but it is not the law of Pennsylvania that only excess verdicts can lead to bad faith, and, in fact, the citation at Appellant's brief at page 10 for that proposition cites a case that doesn't say that. But if you don't have an excess verdict, if I say, you know, I didn't like the way these negotiations went. You should have come up. You know, it was only $15,000, but you know what, insurance company, I'm going to take you to court because I don't want you doing this next time. So I go in and I sue, and then the judge says, well, where's your claim? What's your damages? And I say, well, you know, they paid everything, but I don't think they really negotiated in good faith. Aren't I going to get thrown out of court? You may very well get thrown out of court if you're unable to establish true bad faith conduct, and, in fact, that happens all the time. Oh, what if I did establish horrible, horrible bad faith conduct, but it's within the policy limits and they paid it? That's the birth center case. Well, all right. The Supreme Court of Pennsylvania has decided it's actionable. The focus can't be on the damages. The focus has to be on the conduct. There is or isn't bad faith conduct. A jury decided that there was. This is the third time that this case has gone to trial. That is to say, in the first trial, it was decided that there was bad faith, a punitive damage claim, rather, against the driver. But the jury was clearly led to believe that it was okay to consider the punitives and the fact that the insurer should have thought about that because there was nothing to the contrary. And they did consider it and decided against it. Let me ask you about proximate causation. If I attempt to settle a case and it doesn't settle and then it goes to trial and there's evidence of punitive damages and the jury comes down with a verdict that awards punitive damages, are those damages a result proximately caused by the failure to settle? I think that's the language in Carpenter, Your Honor, which I cited to the court. And the court has the Carpenter case. Carpenter was different. Carpenter, there was a statute, a specific statute, I think it was Arkansas, that said in bad faith everything. So we're talking about state law. Everything kind of but for statute. Here I'm asking you, don't we have to find proximate causation in order to award the damages? Two answers. And apparently the court is not persuaded by this, but I respectfully draw the court's attention to it. They didn't award compensatory damages. There were no bad faith damages here from the first trial. The jury said no. Now, specifically to the court's question, and that is, ought it to be a but-for test in Pennsylvania? I draw the court's attention to the language in Birth Center because the language in Birth Center suggests a but-for test. And that's the Supreme Court of Pennsylvania. Let me ask you about the question I asked at the end to your opposing colleague there. And here the district court appears to have said, look, the punitive damages award is relevant. But didn't the district court do any 403 damage analysis at all? That is, was it more prejudicial than probative to have the jury hear that evidence during a liability phase consideration? Considering liability? Well, I believe that Judge Jones' analysis was completely consistent with Birth Center and with the Carpenter case. I'm asking a strictly evidentiary point right now, okay? Strictly evidentiary point. Did the district court engage in an analysis of whether putting in front of the jury, when it was considering liability, not damages, but considering liability, that there had been a jury verdict previously and a punitive damages award of $50,000? Did he deal with the question of whether there was a substantial risk of unfair prejudice in that that outweighed probative value? I did not read anything in either the court's opinion in Lemonet or thereafter, which suggested that the court believed that that evidence needed to be introduced at one phase as opposed to another. I believe that the court concluded that it was admissible for the purpose of proving the damages which flowed. I did not see his analysis of when it should come in. If he reduced that to writing, Judge Jordan, I missed it. I didn't see it either. So my question to you is, isn't that problematic? I mean, the other side clearly made, well, I shouldn't say clearly. Their argument was, as it could be read to be, this is going to prejudice us. This is going to be bad for us if the jury hears this. Now, whether it was framed as calling for a 403-R analysis or not, should the court have said, I've got to weigh this and see whether it meets 403 balancing? Judge Jordan, it's hard for me to imagine that that alone could be reversible error, since under circumstances in which this jury decided that the plaintiff was not entitled to collect those damages. It's hard to imagine how prejudiced they would be. How prejudiced they would be. Look, I know you want us to think it's just the most amazing coincidence that the $50,000 punitive fee turned out to be the $50,000 punitive fee here. That's like a wild coincidence. But certainly, independent actors looking at this could think, could they not, if that jury hears $50,000, they're going to think damage at $50,000. Except they didn't. But if it is the injury that flowed from the failures settled. That's exactly right. Okay. That's exactly right. Then that's what it is. It's the same 50. Well, except that it isn't, Judge Randall. That is to say, they said no. Well, you can agree with you. You can call it what you want. That is a remarkable coincidence. It sure is. Then if it isn't the injury that flowed, then what's your argument as to why the insurance company should pay it? If it didn't flow from the failure to settle, then you're a couple steps back, aren't you? There's only two things that the jury decided. They decided a question of fact that Allstate was guilty of bad faith, and they decided to impose punitive damages under a Pennsylvania statute of $50,000. That's what they did. Okay. So that didn't flow from the failure to settle, then, you're saying? I do not have an answer for the question, why didn't they pick a different number, because I wasn't in the jury room. What I know are the facts, and the facts are their compensatory award was zero. Now, if it goes back, though, for any reason, are you acknowledging that the jury shouldn't hear the $50,000 number? If it's just coincidence, they don't really need to hear what the $50,000 amount of the earlier punitive damages number is? Judge Jordan, it's much easier for me to answer your last question than this one, and that is your last question was, because they have to hear the $50,000 as a compensatory damage claim in a bifurcated trial, wouldn't it be better if that evidence came in in the second part rather than the first part? And I suppose without giving it the thought it deserves, the answer is that would be easier, that is to allow them to make a decision about bad faith and then hear about the damages which flow from it. What I do not accept, Judge Jordan, is this. I do not accept the suggestion that after hearing all this evidence about this abominable conduct by Allstate in the first trial, that somehow the jury, having heard all about that abominable conduct, will be poisoned if they find out that there was a $50,000 punitive damage claim, and that this jury, because they heard that, was somehow poisoned. And I particularly can't accept that under circumstances in which when they went into the jury room, they decided not to award a penny for it. And they just happened to come out with the precise same number. And they came out with the same number and I don't know why. Yeah. I just don't know. Judge Lopez, questions? I'm all set, thank you. Thank you for your time. Thank you. Rebuttal, Mr. Wolf? Could you address birth center and what your colleague is relying to a great extent on it? You read my mind, Your Honor, and my colleague has, I think, unfortunately, stated the circumstances of birth center. Birth center was, in fact, an excess verdict case. The verdict was paid by the insurer at some point relatively quickly, but after the trial. So Cowden was triggered. So Cowden is not triggered unless there is an excess verdict. So it's apples and oranges. Birth center has nothing to do with the facts of this case, but there was no excess compensatory verdict. And punitives were not part of the underlying verdict in birth center. So I don't think birth center helps plaintiffs at all. I think it's irrelevant. And also to go back to something that Judge Lopez said when my colleague was talking, not only did Allstate notify the insured immediately that it was not going to cover the punitive damages, but he had a right to personal counsel. He, in fact, hired personal counsel. Personal counsel was not active and ultimately didn't appear at the trial, but he did hire personal counsel to advise him about his rights. And finally, as to the 50,000 coincidence, well, it's not a coincidence. If the jury had not heard about the $50,000, I don't think there ever would have been a second phase of the trial because I don't think they would have found that the settlement negotiations were in bad faith. I think the two are linked. It's like the yolk and the white of an egg. They're all in there together. They're all mixed up when you scramble them up. And the only way the jury reached a conclusion that there was bad faith, because they kept hearing over and over, poor Mr. Zerley got stuck with a $50,000 punitive award. How is this poor guy ever going to get out from under that? That's what they heard. So if they didn't hear that, but what they heard was that Allstate's adjuster came in with a $1,200 offer and never moved off of it after there was an assessment by the two judges that it was about six times that amount after they declined to do anything to assess the medical damages themselves. In the face of their own lawyer's assertion to them that we ought to come up, if we come up we can settle this whole thing once and for all, that in the face of all that, and no mention of there was a verdict for $50,000, could a jury have properly found here, wait a second, they just weren't negotiating in good faith. They had ample reason to do something more and they didn't. Well, Your Honor, I've been practicing long enough to know that juries can do just about anything, whether it seems rational or not. I'm not trying to ask what the jury would do. I'm asking about the gate. Could the district court judge, the trial judge, say there's enough there, not talking about what the damages ultimately are, but there's enough there to put it in front of a fact finder to say whether or not that was good faith behavior by all states. Well, understanding I start from the position that in a situation where there's a compensatory verdict within the policy limits, that it should never go to the jury in the first instance. Yeah, I understand your position. I think I understand it in answer to Judge Lopez's question. You could basically write drop dead on a piece of paper and send it back to the plaintiff's lawyer and that that comports with your obligation to negotiate in good faith. That's essentially your position, right, because it's coming in within the policy limits. Yeah, I think that's the position. I mean, that's extreme. I don't think anybody would ever handle it that way. But legally it is. But, yeah. If it goes right to its logical conclusion, yes. Yeah. Okay. And then I just want to conclude by going back to another point, which is that when you're deciding what Pennsylvania would do here, the public policy considerations are extraordinarily strong, and this case is perhaps one of the least sympathetic cases for a plaintiff that there could be. The plaintiff got $15,000. He thought his claim was worth five. He's already gotten more money than he's willing to settle for. So he's gotten one windfall. Now he would get a second windfall from the punitive award. Meanwhile, a guy who was a four-time drunk driver walks away without paying a penny, and the rule that would come out of that verdict is that in every case the insurance company has to consider that their handling of the punitive claim in settlement negotiations and a failure to settle a potential punitive claim could expose you to that kind of bad faith liability. Aren't you putting the rabbit in the hat as soon as you say you're a failure to address a punitive claim? That's the thing that you guys keep talking back and forth against each other with. Well, but that's the reality. If the rule is that you have to consider it, then you have to consider it. Is that the reality? I absolutely believe it is. If the Pennsylvania Supreme Court came down and said, you can be held liable in bad faith if you take a case to trial and you're insured as exposed to punitive damages in excess of the compensatory policy limits, that could be bad faith. Yes, I think that every insurer in every claim that involves a punitive damage is going to have to say, okay, this claim, compensatory claims really only worth $10,000. Plaintiff's demanding $100,000 punitives. God knows what could happen with the punitives. We'd better settle this for a lot more than $10,000 because we don't want to face the risk. And it's the good drivers, the non-drunk drivers, the people who behave reasonably, who are going to pay the premiums that essentially fund those settlements if that becomes the rule. Judge Lopez, anything further? No, thank you. I'm all set. Thank you, and I'm sure you've heard me talk quite enough today. Thank you very much, counsel. The case is well argued. We'll take it under advisement. I ask the clerk to recess the court. We'll clear the courtroom. And, clerk, we'll just take a five-minute and then be right back. Okay, that sounds good. While we clear the courtroom. Okay. I guess his latest message is that you should come back. That's right, yeah. Do you want me to take anything? No, I'm all set. I'd be happy to hang out with you further. No, I think, I don't know why it hasn't been working. I think it will continue to work. Okay. Just show me how I would. How do I pull up the screen and allow me to view it? There's these buttons back here. Do I grab onto it? There's buttons like that. Should we turn the screen on? Okay. What should I turn on? Editing mode. Thank you very much. The clerk was very nice to meet you. Okay, great. All right, thanks very much.